UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00594-MOC

| | | |
|---|---|---|
| **RASHARD DEAN BOYD,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the court on the respondent's Motion to Dismiss (#7) the petitioner's Motion to Vacate, Correct, or Set Aside Conviction and Sentence (#1). After conducting an Initial Review of the petition in accordance with Rule 4 of the Federal Rules Governing Section 2255 Proceedings, the court directed the government to Answer or otherwise respond to the Petition on November 3, 2014. Order (#2). In that Order, the court determined that petitioner had expressed the following colorable claim:

(I) Petitioner received ineffective assistance of trial counsel when counsel failed to offer a timely proffer to the government, in violation of the Sixth Amendment.

Id. at 1. Petitioner also attempted to assert a second claim, wherein he re-asserted his first contention in terms of an Eighth Amendment "cruel and unusual claim." The court determined that in that claim petitioner had not stated a colorable constitutional claim and that such claim was duplicitous of his first claim.

Respondent timely filed its Response (#7) on February 4, 2015, and the court then entered its Order (#8) allowing petitioner an opportunity to file a Reply as provided in Rule 5. Petitioner

-1-

timely moved (#9) for an extension of that deadline, which the court allowed. Order (#10). Petitioner then timely filed his Reply (#11) (mistakenly captioned as a "Response" to the respondent's Response). Having considered the Petition, the memoranda, and all the pleadings in this and the underlying criminal case, United States v. Boyd, 3:11-CR-277, the court enters the following findings, conclusions, and Order dismissing the petition.

**FINDINGS AND CONCLUSIONS**

  I.    **Background**

Petitioner was sentenced by this court to 235 months imprisonment based on his plea to a Bill of Information charging him with a *Hobbs Act* conspiracy, 18 U.S.C. § 1951, and the use and carrying of a firearm that was brandished during or in relation to a crime of violence, 18 U.S.C. § 924(c). The factual basis for that conviction is not disputed: in July and August 2009, Boyd and other individuals, including Cameron Hallman and Shameron Hallman ("the Hallmans"), participated in a series of 11 armed robberies of businesses in this district and the District of South Carolina. Presentence Report (#40), 3:11-CR-277 ("PSR") at 3–6. During several of the robberies, petitioner threatened employees and customers of the businesses with firearms. Id.

It is equally undisputed that between petitioner and the Hallmans there was sentencing disparity; however, such was warranted disparity as the court determined at sentencing. While petitioner received a sentence of 235 months, Cameron Hallman received a 114 month sentence and Shameron Hallman received a 176 month sentence. As the court explained to petitioner during sentencing, both of the Hallmans' sentences were lower than his based on a government-sponsored Motion for Downward Departure.

It is that disparity in sentencing which is at the center petitioner's collateral attack on his sentence. Petitioner contends that after he received a target letter and the court appointed him counsel, he wanted to plead guilty immediately, but that his attorney advised him to wait until he could evaluate the strength of the government's case. Petitioner avers that rather than enter a plea or seek an opportunity to assist, his attorney advised him that he thought the government's case might be weak since he was not immediately arrested, that counsel needed to review the evidence to determine its strength, and that he would request that the government make a "reverse proffer."[1] He contends that counsel's pre-plea strategy was ineffective because it did not afford him, unlike the Hallmans, an opportunity to provide substantial assistance. Petitioner alleges that by the time his counsel secured a plea it was too late as the Hallmans had already cooperated with the government and entered their pleas. The court has accepted as true petitioner's factual averments concerning events that transpired before he entered his plea for the limited purpose of reviewing the government's Motion to Dismiss.

**II.     Discussion**

In moving to dismiss, respondent contends that by entering a plea, petitioner has waived his claim of pre-plea ineffective assistance of counsel. The court agrees.

When a "defendant pleads guilty, he waives all non-jurisdictional defects in the proceedings conducted prior to the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Where there is a plea, what the court is concerned with in conducting a § 2255 review is whether there was any defect which could have rendered that plea unknowing or involuntary as

---

1     Sometimes called a "dog and pony show" by prosecutors, a reverse proffer is where the government makes a presentation of the evidence it has to the defendant and counsel, usually for purposes of eliciting a quick plea. On the offer hand, a "proffer" is where the defendant comes in with counsel and informs the government what evidence of other criminal activity he has in hopes of securing a government sponsored departure.

those elements are the lynchpins to a constitutional plea. Where the alleged missteps of counsel do not touch on whether the plea was knowing and voluntary, such a defect is a non-jurisdictional defect. United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997).

Here, there is no connection between the alleged pre-plea missteps of counsel and the knowing or voluntary basis of the plea as found by the magistrate judge and again by this court at sentencing. Instead, petitioner alleges, as he did at sentencing, that by seeking a reverse proffer and in delaying entry of a plea, he was denied the opportunity to benefit from a government sponsored motion for a downward departure. In essence, petitioner is not contending that his plea was involuntary, unknowing, or illegal, but that it was not entered fast enough.

The Supreme Court has recognized the right to "effective counsel during plea negotiations." Missouri v. Frye, 132 S. Ct. 1399, 1407-08 (2012). While there is no constitutional right for a defendant to enter into a plea agreement, Weatherford v. Bursey, 429 U.S. 545, 561 (1977), and the decision to initiate plea negotiations is ordinarily a strategic decision within the purview of defense counsel, Hawkman v. Parratt, 661 F.2d 1161, 1171 (8th Cir. 1981), counsel is still required to be a "reasonably effective advocate" regarding the decision to seek a plea bargain. Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993). That does not mean, however, that a defense attorney is required to beat other lawyers to the plea and substantial-assistance tables; if it did, there would always be one attorney who was last and therefore ineffective. As such defect does not touch on whether petitioner entered a knowing and voluntary plea, such claim is foreclosed as waived.

Even if the claim was not waived, petitioner's claim fails substantively. To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance (1)

fell below an objective standard of reasonableness and (2) that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 687, 687-91 (1984). In order to satisfy the performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id., at 687-88. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id., at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992). The prejudice prong is satisfied by showing that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id., at 694. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citation omitted). If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Id., at 1290, citing Strickland, 466 U.S. at 697.

Petitioner's claims fails to meet the first prong of Strickland. The Court of Appeals for the Ninth Circuit was presented with an almost identical contention in United States v. Leonti, 326 F.3d 1111 (9th Cir. 2013), and held as follows:

> [Attorney] Kaplan's reason for advising Leonti that he should not cooperate immediately … was that Kaplan wanted to review the discovery in the case before entering into a plea agreement. That decision was tactical, *se*e *1121 *id.* at 689, 104 S.Ct. 2052, and cannot be called unreasonable. The American Bar Association standards advise defense attorneys that "[u]nder no circumstances should a lawyer recommend to a defendant acceptance of a plea unless a full investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial." *ABA Standards for Criminal Justice* 4–6.1(b).

Id. at 1120 -1121. While another attorney may have done precisely what petitioner contends should have been done, such conduct would be in contravention of the ABA model code. Here,

petitioner's own affidavit shows that his attorney adhered to the ABA model standards for criminal practice. Standards of professional practice, such as the ABA standards, help courts determine the standard for an attorney's performance. Frye, 132 S.Ct. at 1408. As other courts have found,

> counsel was faced with a large amount of discovery and an unusually short amount of time in which to proffer the plaintiff. Counsel's decision to review and analyze discovery prior to proffering the plaintiff was a tactical decision that followed ABA standards. As such it cannot be called unreasonable.

United States v. Burchell, 2014 WL 2998598, *3 (D.Or. June 30, 2014)(citation and corresponding quotation marks omitted). Thus, petitioner's claim is not only waived, it is without merit substantively under Strickland.

**III. Conclusion**

While petitioner complains that his sentence was not as low as it could have been had he been afforded the opportunity to cooperate, petitioner's case was in no manner prejudiced by the advice of counsel. Quite the opposite: counsel was highly effective in achieving what was a favorable result as plaintiff received three levels off for acceptance of responsibility and was sentenced at the bottom of the advisory guidelines range on Count One of conviction. Had petitioner gone to trial and been convicted, his sentence could have been as high as 346 months rather than the 235 he ultimately received.

Further, this court gave petitioner every opportunity it could for a lower sentence when it considered his motion for a downward variance at sentencing. In that motion, petitioner requested that "this court grant him a downward variance from the sentencing guideline range for the same level reduction that his codefendants receive in their case." Sentencing Memorandum (#7), 3:11-CR-277. While the court explained at sentencing that some sentencing disparities were warranted, such as in this case where the Hallmans were the beneficiaries of substantial assistance motions,

the court would sometimes impose a downward variance from an advisory guidelines range if a defendant demonstrates a good-faith willingness and ability to cooperate, but the government refuses to give him "any chance" to receive a motion under U.S.S.G. § 5K1.1. Sent. Trans (#62), 3:11cr277 at 16–17. In denying the requested variance, the court found that petitioner was not an appropriate candidate for such relief because the court had "no information" that petitioner "would have or could have" actually cooperated. Id. at 17.

In the end, petitioner has waived his claim of ineffective assistance for pre-plea advice and even if there was no waiver, petitioner's claim does not survive the first prong of Strickland as such representation was in full conformity with the highest standards of professional competence.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the respondent's Motion to Dismiss (#7) is **ALLOWED** and petitioner's Motion to Vacate, Correct, or Set Aside Conviction and Sentence (#1) is **DISMISSED** with prejudice.

**Denial of Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this court declines to issue a certificate of appealability as petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller -El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484–85 (2000) (in order to satisfy § 2253(c) when court denies relief on procedural

grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right).

Signed: April 27, 2015

Max O. Cogburn Jr.
United States District Judge